IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2014 AUG 22  PM 2: 31

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____

PATRICIA TIMMINS,

                **Plaintiff,**

-vs-

                                            **Case No.  A-13-CA-894-SS**

STONEBRIDGE LIFE INSURANCE COMPANY,
                **Defendant.**

## O R D E R

       BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Stonebridge Life Insurance Company's Motion for Summary Judgment [#19], Stonebridge's Amended Motion for Summary Judgment [#38], Plaintiff Patricia Timmins's Response [#39], Stonebridge's Motion for Extension of Time to File Reply [#44],[1] Stonebridge's Reply [#50], Plaintiff's Motion for Leave to File Sur-Reply [#51],[2] and Stonebridge's Response in Opposition to Timmins's Motion for Leave to File Sur-Reply [#52]; Stonebridge's Brief on Choice of Law Issues [#47]; Plaintiff's Motion for Leave to File Amended Response [#48];[3] Stonebridge's Motion for Leave to File Sur-Reply and Amended Answer [#28];[4] Stonebridge's Motion to

---

    [1] The Motion for Extension of Time [#44] is GRANTED.

    [2] The Motion for Leave to File Sur-Reply [#51] is GRANTED, and the Court has reviewed the attached Sur-Reply [#51-1].

    [3] The Motion for Leave to File Amended Response [#48] is GRANTED, and the Court has reviewed the attached amended response.

    [4] The Motion for Leave to File Sur-Reply and Amended Answer [#28] is GRANTED.

Withdraw its Opposition to Timmins's Motion for Extension of Time [#32];[5] and Plaintiff's Motion for Partial Summary Judgment [#49], and Stonebridge's Response [#53]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING summary judgment in favor of Stonebridge on two claims, but DENYING summary judgment on the prompt-payment claim.

## Background

This is ostensibly a dispute over an insurance company's obligation to pay a $25,000 accidental death benefit pursuant to its insurance policy. In February 2014, several months after the lawsuit was filed, the insurance company paid the benefit in full. The litigation continued in full force. The briefing on the currently pending motions—nearing 200 pages, and many more times that in exhibits—reveals this is now primarily a conflict between attorneys,[6] and a fight over fees.

The insurance policy involved in this case is between J.C. Penney Life Insurance Company (which is now the Defendant, Stonebridge) and Diamond Shamrock Refining and Marketing Company. The Policy was issued in 1998 and renewed annually. Pursuant to the Policy, each individual enrollee is issued a "Certificate of Insurance." The Certificate at issue here was issued to William C. Timmins, the Plaintiff's husband, effective June 24, 2002. Mr. Timmins remained covered under the Policy at all relevant times.

The Certificate, which mirrors the Policy, provides for the payment of an accidental death benefit if an insured suffers an accidental, fatal "injury." Defs.' Am. Mot. Summ. J. [#38-1], Ex. A

---

[5] The Motion to Withdraw [#32] is GRANTED.

[6] Countless pages of the parties' briefs are dedicated to meaningless squabbles, complete with name-calling and a healthy dose of righteous indignation.

(Certificate), at 2, 8. Except for injuries resulting from travel by common carrier or automobile, the amount of the benefit is $25,000. *Id.* at 8. An injury is defined as a "bodily Injury . . . caused by an accident" which "results in Loss covered by the Policy" and "creates a Loss due, directly and independently of all other causes, to such accidental bodily Injury." *Id.* at 2. "Loss," as relevant here, includes death. *Id.* The Certificate also contains several exclusions, including (1) an exclusion for any injury "due to disease [or] bodily or mental infirmity," and (2) an exclusion for any injury which "does not directly and independently of all other causes create a Loss." *Id.* at 4. To receive benefits under the Policy, the claimant must provide a "Written Notice of Claim" within thirty days of a covered Loss (or "as soon as possible thereafter") and further provide a "Written Proof of Loss" within ninety days of a covered Loss (or "as soon as possible thereafter"). *Id.* at 7.

On September 19, 2011, Mr. Timmins died at his home. North Blanco County EMS was dispatched to the scene, and the EMS records indicate the dispatch was for a "Cardiac Arrest." Defs.' Am. Mot. Summ. J. [#38-1], Ex. C (EMS Records), at 1. EMS was greeted by a paramedic already on the scene, who described the situation as "an obvious death." *Id.* Mr. Timmins was "found sitting in the corner of the bathroom, with his hands wrapped around a toilet that ha[d] been dislodged from the floor and [was] leaning against [him]." *Id.* EMS observed "[a] significant amount of blood . . . in and around [Mr. Timmins's] mouth and nostrils, down the front of [Mr. Timmins], and . . . on the bathroom floor." *Id.* The EMS Records reflect the paramedic relayed the Plaintiff came home, could not find Mr. Timmins, and "'was worried he was dead' when he didn't respond." *Id.* Plaintiff also allegedly stated, "'we knew this was coming, but just didn't expect it so soon.'" *Id.* EMS was informed by present family members that Mr. Timmins had been recently diagnosed with lung cancer, completed radiation and chemotherapy, and had been doing relatively well despite getting

progressively weaker and experiencing "several syncopal episodes." *Id.* EMS was also told Mr. Timmins "ha[d] esophageal lesions that cause [him] to spit up blood frequently," and had "a cardiac history." *Id.* EMS concluded the death was "Presumed Cardiac," an "Obvious Death" and "Cardiac Arrest," and documented the "Reason for Encounter" as "Non-Injury." *Id.* at 2.

Members of the Blanco County Sheriff's Department were also dispatched to the scene. Their records reflect Plaintiff "said the death was of natural causes due to the fact that Mr. Timmins had multiple health problems." *Id.* [#38-1], Ex. C (Sheriff's Narrative), at 1. Plaintiff confirmed Mr. Timmins's lung cancer diagnosis, and stated he "suffered from gastrointestinal difficulties, open infections in the larynx, past open heart surgery, and was taking several medications for other ailments." *Id.* The Sheriff's Department representative concluded "Mr. Timmins appeared to have suffered from a possible cardiac symptom and fell to the floor. Mr. Timmins attempted to catch himself by grabbing the toilet which broke from the floor anchors and Mr. Timmins appeared to hit the toilet with his face causing bleeding from the nose." *Id.* The death was deemed to be from "natural causes." *Id.* A Supplemental Narrative dated September 21, 2011 reiterated Mr. Timmins "was found at home and deceased from natural causes." *Id.* [#38-1], Ex. C (Sheriff's Supp. Narrative), at 1. Records of the 9-1-1 call initially classified the "Incident Type" as "Accidental Injury," but this conclusion was changed to "Unattended Death" before the incident was closed. *Id.* [#38-1], Ex. C (9-1-1 Records), at 2.

An inquest was requested from a Justice of the Peace. The Sheriff's Office's "Deceased Person Inquest Form" noted Mr. Timmins was found in the bathroom, where he "stumbled grabbing the toilet" and "appeared to have hit his nose against the toilet and [bled] from the nose on the toilet." *Id.* [#38-1], Ex. C (Inquest Request), at 1. Justice of the Peace Terry Carter conducted the

-4-

inquest. His handwritten "Inquest Worksheet" indicated Mr. Timmins appeared to have fallen while standing over the toilet. Pl.'s App'x II [#40-1], Ex. P-7 (Inquest Worksheet), at 1. The notes reflect Justice Carter pondered a number of possible causes for the incident, including Mr. Timmins passing out and falling, slipping and falling, and dying of asphyxiation after choking on blood or vomit (though Justice Carter noted Mr. Timmins's face "was not apparent blue"). *Id.* at 2. Given Mr. Timmins's related health history—including Chronic Obstructive Pulmonary Disease, heart problems, lung cancer, and throat lesions causing bleeding—Justice Carter consulted the family and determined no autopsy was necessary. *Id.* The Death Certificate prepared and signed by Justice Carter ultimately concluded the "Manner of Death" was "Natural," not "Accident," with the immediate cause being a "probable heart attack" and the underlying causes being "coronary artery disease," "hypertension," and "lung cancer." Def.'s Am. Mot. Summ. J. [#38-1], Ex. B (Death Cert.), at 1.

Plaintiff verbally notified Stonebridge of Mr. Timmins's death on December 16, 2011, and was sent claim forms by Stonebridge the next day. *Id.* [#38-1], King Aff. ¶ 8. Plaintiff responded on August 7, 2012, by submitting a claim with the assistance of her current counsel. *Id.* ¶ 9. The materials provided to Stonebridge were: (1) a claim affidavit from the Plaintiff; (2) the Death Certificate and Inquest Worksheet; (3) the North Blanco County EMS records; (4) the Blanco County Sheriff's Office records; (5) the Inquest Form; (6) the 9-1-1 records; (7) prior medical records from Mr. Timmins's oncologist, Dr. James Uyeki; (8) prior medical records from Dr. James Williams, M.D.; (9) two authorizations for release of medical information; (10) a report of death from the funeral director; (11) an obituary; and (12) a document containing a short "description of accident scene." *See id.* [#38-1], Ex. C (letter and claim materials). The letter included by counsel indicated

Mr. Timmins was initially assumed to have died because of a heart attack, but counsel's "subsequent investigation reveal[ed] the cause of death was the result of the accident," meaning Mr. Timmins "falling and hitting his head on a commode in his bathroom." *Id.*

Stonebridge responded to Plaintiff on August 14, 2012, by letter. The letter acknowledged receipt of the claim materials and summarized some of the materials provided. *Id.* [#38-1], Ex. D, at 1. Stonebridge stated it was not denying Plaintiff's claim, but needed "additional proof of loss" indicating "Mr. Timmins' death was due to bodily Injury which [was] caused by an accident due directly and independently of all other causes." *Id.* at 1–2. Specifically, Stonebridge requested "medical information from a medical doctor" supporting Plaintiff's claim the accident was the sole cause of death, and an "amended Certificate of Death." *Id.* at 2. Plaintiff did not respond to this letter.

On September 18, 2013, Plaintiff filed this lawsuit, alleging the following causes of action: (1) breach of contract, arguing Stonebridge failed to pay the benefits owed under the Policy; and (2) violations of the Texas Insurance Code, specifically (a) failure to promptly pay the claim, and (b) violation of the duty of good faith and fair dealing by refusing to pay benefits without a reasonable basis.[7] The same day, Plaintiff also sent a letter and "Motion to Reopen the Inquest" to Justice Carter, requesting the Death Certificate be amended. *See id.* [#38-1], Ex. G. The motion was not sent to Stonebridge. The motion did not include any evidence or exhibits, but asserted counsel had conducted an investigation revealing the cause of death was an accidental fall resulting in a traumatic

---

[7] The case was initially filed in Texas state court, but was removed to this Court on October 8, 2013.

brain injury causing death. *Id.* The motion listed various witnesses who would be expected to testify at the reopened inquest. *Id.*[8]

Justice Carter issued an Amended Death Certificate on October 1, 2013, changing the "Manner of Death" to "Accident," changing the immediate cause of death to "asphyxia by vomitus," and changing the underlying causes to "blunt force injury to face," "fall," and "lung cancer." *Id.* [#38-1], Ex. H (Am. Death Cert.), at 1. On November 13, 2013, Plaintiff provided a copy of the Motion to Reopen Inquest and the Amended Death Certificate to Stonebridge. In response, Stonebridge requested Justice Carter's investigation file on November 18, 2013. The file was delivered to Stonebridge on December 9, 2013, though the Motion to Reopen Inquest was not included in the file. King Aff. ¶ 16. That same day, Stonebridge requested a complete copy of the Motion to Reopen Inquest and all exhibits from Plaintiff, and was provided a copy of the motion and informed no exhibits were submitted. *Id.* Stonebridge also requested Mr. Timmins's medical records, and received them on February 19, 2014. *Id.* ¶ 17. Stonebridge ultimately concluded there was nothing "to support or refute the finding in the Amended Death Certificate," and Stonebridge paid the $25,000 benefit on February 22, 2014. *Id.* ¶¶ 18–19.

Stonebridge now moves for summary judgment on all claims. Plaintiff also cross-moves for summary judgment on the breach of contract claim only.

---

[8] These witnesses were: Dr. Uyeki, the oncologist; the Plaintiff; Mr. Timmins's daughters; the paramedic who first arrived on the scene; a Deputy Sheriff; an EMS worker; and two other individuals present at the scene of the accident.

## Analysis

## I.     Motion for Summary Judgment—Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence

supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.    Application

Before turning to the merits of the summary judgment motions, the Court must address a choice-of-law issue raised by the parties.

## A.    Choice of Law

Plaintiff asserted claims for breach of contract and violations of the Texas Insurance Code. Notwithstanding her express invocation of Texas state law, Plaintiff asserts her breach of contract claim should be governed by Illinois law because the Policy contains the following choice-of-law clause: "This Policy is Issued in the State of Illinois, and its terms shall be construed in accordance with the laws of the State of Illinois." Defs.' Am. Mot. Summ. J. [#38-1], Ex. A (Policy), at 1. The distinction is important, says Plaintiff, because Illinois and Texas interpret the Policy phrase "directly and independently of all other causes" differently. *Compare Faulkner v. Allstate Life Ins. Co.*, 684 N.E.2d 155, 157–59 (Ill. App. 1997) (phrase requires showing accidental injury was "'a' proximate cause . . . rather than 'the' one and only proximate cause"), *with JCPenney Life Ins. Co. v. Baker*,

-9-

33 S.W.3d 417, 421 (Tex. App.—Fort Worth 2000, no pet.) (phrase requires showing accidental injury was "the sole cause of death"). Stonebridge disagrees and contends Texas law should apply to all claims.

> The Texas Insurance Code contains its own choice-of-law provision, which states:
>
> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

TEX. INS. CODE art. 21.42. The Texas Supreme Court has held article 21.42 cannot "be given extraterritorial effect." *Howell v. Am. Live Stock Ins. Co.*, 483 F.2d 1354, 1360 (5th Cir. 1973) (citing *Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.3d 697, 701 (Tex. 1968)). Accordingly, article 21.42 "will apply to contracts made between Texas citizens and insurance companies doing business in Texas, *when and only when* those contracts are made in the course of the company's Texas business." *Id.*; *see also Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 341 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("The provision applies to an insurance contract when: (1) the insurance proceeds are payable to a Texas citizen or inhabitant; (2) the policy is issued by an insurer doing business in Texas; and (3) the policy is issued in the course of the insurer's business in Texas."). In all other cases, "the law to be applied [is] to be the law the parties intended to apply." *Howell*, 483 F.2d at 1360.

In this case, the proceeds of the Policy are payable to a Texas citizen. But the Court cannot determine whether article 21.42 should apply because the parties have not presented any evidence concerning whether the Policy was issued by an insurer "doing business in Texas . . . in the course

-10-

of the insurer's business in Texas." *See Reddy Ice*, 145 S.W.3d at 341. Although Stonebridge asserts the various corporate entities involved were all doing business in Texas and issued the Policy, its renewals, and the annual certificates as part of their Texas business, Stonebridge ultimately concedes those claims have not yet been proven. *See* Def.'s Opp. [#52], at 1 (explaining Stonebridge "is attempting to obtain documents" supporting its choice-of-law argument, and noting discovery is ongoing).

Ultimately, however, this dispute is not critical to the outcome of this case. As Texas courts have recognized, "[i]f the result would be the same under the laws of either jurisdiction, there is no need to resolve the choice of law question." *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 314 (Tex. App.—Dallas 2004, no pet.) (citing *Duncan v. Cessna*, 665 S.W.2d 414, 419 (Tex. 1984)). For the reasons explained below, Stonebridge is entitled to summary judgment on the breach of contract claim under either Texas or Illinois law, and therefore the Court need not resolve the choice-of-law dispute.

## B.      Breach of Contract Claim

Plaintiff alleges Stonebridge breached the Policy by failing to pay the accidental death benefit when she submitted her claim in August 2012. Plaintiff filed this lawsuit alleging the breach on September 18, 2013, meaning any breach must have occurred by that date. Stonebridge contends it is entitled to summary judgment because there is no dispute the facts presented to Stonebridge in August 2012 failed to establish coverage under the Policy.[9] Plaintiff contends otherwise, and

---

[9] Stonebridge also contends there can be no breach of contract, as a matter of law, because it ultimately paid the benefit. Stonebridge cites no authority suggesting a mid-litigation decision to pay a disputed claim immunizes an insurer from liability for a prior breach, including any attorney's fees recoverable by the plaintiff who was forced to litigate the claim to receive payment.

separately moves for summary judgment on the grounds Stonebridge's decision to pay the benefit in February 2014 conclusively proves the Policy was breached.

Under either Texas or Illinois law, an insured has the burden of establishing coverage under the terms of the insurance policy. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) ("Initially, the insured has the burden of establishing coverage under the terms of the policy."); *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009) ("This court has long established that the burden is on the insured to prove that its claim falls within the coverage of an insurance policy."). Under the terms of the Policy issued in this case, Plaintiff's burden was to prove Mr. Timmins was "injured" in an "accident," meaning he "suffered an Injury" as defined by the Policy. *See* Certificate at 2. The Policy defines an "Injury" as bodily injury "caused by an accident" and which "creates a Loss due, directly and independently of all other causes, to such accidental bodily injury." *Id.*

The summary judgment record establishes that Plaintiff, at the time she submitted her claim, failed to carry her burden of establishing coverage under the Policy. Virtually all of the documentation Plaintiff submitted in support of her claim indicated Mr. Timmins died of a heart attack resulting from his numerous health problems, including his lung cancer. EMS was dispatched for a cardiac arrest, and the EMS records indicate EMS concluded the death was the result of a heart attack, not any injury Mr. Timmins sustained as a result of his fall. The EMS records also relate various contemporaneous statements by Plaintiff suggesting Mr. Timmins's death was expected as a result of his numerous health problems. Plaintiff offered no challenge to these statements in her claim materials. The Sheriff's Office reached the same conclusion—death from natural causes,

namely cardiac arrest—and documented its findings in two separate narratives, neither of which were challenged by Plaintiff when included in her claim documentation.

Perhaps the best evidence of non-coverage was the Death Certificate submitted by Plaintiff. The Death Certificate declared the cause of death was natural, not accidental, resulting from a probable heart attack contributed to by numerous preexisting conditions including lung cancer. The parties agree a death certificate is "prima facie evidence of the facts stated in the record[]." TEX. HEALTH & SAFETY CODE § 191.052. At the time Plaintiff submitted her claim, she did not submit *any evidence* rebutting the conclusion reached by Justice Carter on the Death Certificate, which was the same conclusion reached by EMS and the Sheriff's Office on the scene.

Plaintiff argues the contemporaneous records from the night of the incident contain inconsistencies and "rank speculation" about Mr. Timmins's death, thereby creating some factual dispute precluding summary judgment. Although the records do contain descriptions of the fall and, in the case of Justice Carter's notes, speculation about the cause of the fall, the officials present at the scene unanimously reached the same conclusion: death by cardiac arrest. This process is inherently speculative because nobody was present for Mr. Timmins's death, and Justice Carter and the family agreed not to have an autopsy performed to confirm the cause of death. As a result, the only evidence of the cause of death concluded it was natural, not accidental.

Plaintiff also relies on her claim affidavit and her written "description of accident scene" to establish the cause of death as accidental. Plaintiff's claim affidavit is the basic claim form apparently provided by Stonebridge. On the form, Plaintiff states: "Deceased fell in bathroom, hitting head on commode." Defs.' Am. Mot. Summ. J. [#38-1], Ex. C (Claim Aff.), at 1. When asked to list

the type of injuries sustained, Plaintiff wrote: "Mouth, nose, brain injuries." *Id.*[10] These threadbare statements by the Plaintiff at most *imply* the death was accidental, and even then are contrary to Plaintiff's own statements as reflected in the uncontested records she submitted with her claim, and also unsupported by any independent evidence.[11] A claimant's conclusory assertion the death was accidental is insufficient to rebut the unanimous opinion of every official record from the scene of the death, including the Death Certificate. Similarly, counsel's letter included with the claim materials referenced a "subsequent investigation" which had determined the cause of death to be the fall, but no evidence was included to support counsel's statement. The "description of accident scene" merely repeats various portions of the descriptions offered by EMS, the Sheriff's Office, and Justice Carter. It offers no opinion as to the cause of death, and therefore offers nothing more than the underlying records themselves.

In responding to Stonebridge's motion for summary judgment, Plaintiff includes a new affidavit disputing, for the first time, the accounts of her statements on the night of Mr. Timmins's death. *See* Pl.'s App'x I, Ex. P-6 (Timmins Stmt.), ¶¶ 9–11. Plaintiff also relays a hearsay account of what Mr. Timmins's oncologist, Dr. Uyeki, opined was the cause of death in post-incident discussions with Plaintiff. *Id.* ¶ 14. The latter, of course, is pure hearsay, and a wholly incredible

---

[10] There was no evidence submitted with Plaintiff's claim even suggesting Mr. Timmins suffered any "brain injury." None of the parties investigating the incident even raised the possibility of a "brain injury" as a cause or effect of the incident.

[11] Plaintiff argues it was "unreasonable" for Stonebridge to require her to submit evidence in support of her claim, specifically referencing Stonebridge's letter requesting Plaintiff provide information from a medical doctor and an amended death certificate. Yet Plaintiff concedes it was her burden to establish coverage under the Policy. When all of the evidence, including a death certificate, indicates a death was not accidental, it is not unreasonable for an insurer to request some evidence supporting a claim it *was* accidental. Notably, Plaintiff never responded to that letter, and instead waited more than one year and then filed her lawsuit.

attempt to backdoor expert testimony into this case at the eleventh hour.[12] But even if it were admissible, none of this evidence is relevant. At the time Plaintiff filed her statement—July 18, 2014—she had already made her claim (nearly two years prior), already filed her lawsuit (nearly one year prior), and *Stonebridge had already paid the claim* (five months prior). Plaintiff's late-stage attempt to refute the evidence she submitted with her own claim has no bearing on Stonebridge's decision not to pay the benefit as of the date Plaintiff filed this lawsuit.

Similarly, the Amended Death Certificate issued by Justice Carter was issued only *after* this litigation commenced, and therefore cannot possibly form the basis of any breach. A breach occurred, if at all, by the time Plaintiff filed this lawsuit. At that time, the only evidence in existence, let alone in the record, indicated Mr. Timmins died from a heart attack, not his fall.[13] Plaintiff therefore failed to establish coverage under the terms of the Policy, and Stonebridge did not breach the Policy as a matter of law by failing to pay Plaintiff's claim prior to September 18, 2013.

Finally, Plaintiff has filed her own motion for partial summary judgment on the breach of contract claim. In her motion, Plaintiff asks the Court to import a rule from Florida law and hold Stonebridge's payment of the benefit mid-litigation entitles Plaintiff to attorney's fees as a matter of law. The Court declines this invitation. There is no basis for importing a Florida law construction of a Florida attorney's fees statute into either Texas or Illinois law. *See Wollard v. Lloyd's & Cos.*

---

[12] Stonebridge, by contrast, provided an expert report and supporting affidavit from its own medical expert, who opined the cause of death was "Complications of Lung Cancer." *See* Defs.' Am. Mot. Summ. J. [#38-3] (Rohr Aff.), ¶ 4. This evidence is largely irrelevant, too, because it was not prepared until June 2014. Whatever Dr. Rohr's opinion, it clearly had no impact on Stonebridge's decision not to pay Plaintiff's claim by September 18, 2013, when Plaintiff first accused Stonebridge of having breached the Policy by failing to pay.

[13] This is true regardless of whether the standard is "sole" proximate cause or merely "a" proximate cause. Nothing other than Plaintiff's Claim Affidavit even suggested the fall was "a" proximate cause of Mr. Timmins's death, let alone the "sole" proximate cause.

*of Lloyd's*, 439 So.2d 217, 218 (Fla. 1983) (holding an insurer's decision to settle a claim is "the functional equivalent of a confession of judgment or a verdict in favor of the insured," and should therefore trigger an attorney's fees statute tied to the entry of a final judgment). Additionally, the Court rejects the premise underlying Plaintiff's motion—the idea that Stonebridge's decision to pay in February 2014 establishes as a matter of law it breached the contract as of September 2013. Stonebridge's decision to pay was made only *after* Plaintiff submitted an amended death certificate declaring the death accidental. Prior to the submission of that document to Stonebridge, there was no evidence even arguably establishing coverage under the statute, and thus no basis for holding Stonebridge had breached as a matter of law.

## C.   **Texas Insurance Code Claims**

Plaintiff has also brought claims under the Texas Insurance Code, arguing Stonebridge failed to promptly pay her claim[14] and violated its duty of good faith and fair dealing. Stonebridge is entitled to summary judgment on the latter claim only.

Under Texas law, an insurer has fifteen days from receipt of notice of a claim to "(1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant." TEX. INS. CODE § 542.055. The insurer is then required to "notify the claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure

---

[14] In her response, Plaintiff suggests Stonebridge may also be liable for failing to investigate. First, nothing in Plaintiff's live Original Petition suggests Stonebridge failed to investigate or put Stonebridge on notice of a failure-to-investigate claim, and the Court therefore declines to consider such a claim raised for the first time in dispositive motion briefing. Second, the undisputed evidence shows Stonebridge did promptly review Plaintiff's claim documentation and respond in writing requesting additional information, indicating it had commenced an investigation.

final proof of loss." *Id.* § 542.056. Once an insurer notifies a claimant it will pay a claim, the insurer has five business days to do so. *Id.* § 542.057. If the insurer delays for more than sixty days beyond that time period, it is liable for damages in the form of "interest on the amount of the claim at the rate of 18 percent a year . . . together with reasonable attorney's fees." *Id.* §§ 542.058, .060.

The first step in analyzing a prompt-payment claim is determining when the insurer "receive[d] all items, statements, and forms required by the insurer to secure final proof of loss." *Id.* § 542.056. That date starts the fifteen business day timer to accept or reject a claim. The actual acceptance date then starts a five business day timer for payment, and the sixty day timer begins to run once those five days pass. Based on the record before the Court, it is impossible to determine as a matter of law what date Stonebridge received all the necessary paperwork to establish the loss. Stonebridge's Amended Answer admits Plaintiff provided, post-lawsuit, "additional information and documentation sufficient to show potential coverage under the Certificate," but neither identifies that information nor the date on which it was received. Am. Answer [#18] ¶ 26. Without such a date, it is impossible to determine Stonebridge's liability.

The earliest possible date Stonebridge asserts it had received "all items, statements, and forms required by the insurer to secure final proof of loss" was December 9, 2013, the date it received Justice Carter's records. Those records were necessary to determine what evidence, if any, Justice Carter relied upon in issuing his Amended Death Certificate. The Amended Death Certificate was contrary to every other piece of evidence attached to the claim, including the original Death Certificate. Stonebridge therefore would have had until the fifteenth business day after December 9, 2013—which would be January 3, 2014, accounting for numerous holidays—to inform Plaintiff in writing it was accepting or rejecting her claim.

-17-

Stonebridge seeks to take advantage of this full period of time for acceptance because its payment would then have been due five business days later, on January 8, 2014. Stonebridge's actual payment on February 22, 2014, was well within sixty days of January 8, 2014. But there is no evidence in the summary judgment record concerning when—or if—Stonebridge informed Plaintiff it had accepted and agreed to pay her claim. If Stonebridge made that decision, for example, on December 16, 2013, payment would have been due December 23, 2013, five business days later. Sixty days from December 23, 2013, is February 21, 2014, meaning Stonebridge's payment would have been one day late. Without any evidence of the date Stonebridge agreed to pay the claim, it is impossible to accurately determine the payment due date, and therefore impossible to say, as a matter of law, Stonebridge complied with the Texas Insurance Code's payment deadlines. Summary judgment is therefore inappropriate on the prompt-payment claim.

To be liable for breaching its duty of good faith, an insurer must have denied payment of a claim when it "knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). "An insurer does not breach its duty merely by erroneously denying a claim." *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997). Additionally, "[e]vidence that only shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Id.*

The summary judgment record fairly establishes there was, at a minimum, at least a good faith dispute regarding coverage up to the point Stonebridge decided to pay the claim. The initial claim documentation was insufficient to establish coverage. The Amended Death Certificate provided some evidence of coverage, but was also contrary to other evidence in the record and unaccompanied by any explanation for its change or even an indication of what sources Justice

-18-

Carter consulted in reaching his new conclusion. Plaintiff has not identified any evidence suggesting there was anything other than a good faith coverage dispute in this case, and has therefore failed to show a genuine dispute as to any material fact on her bad faith claim. *See id.* (insurer entitled to summary judgment where evidence establishes there "was no more than a good faith dispute" regarding coverage).

## Conclusion

At the time Plaintiff filed this lawsuit, she had failed to carry her burden of establishing coverage under the Policy. Stonebridge is therefore not liable for breaching the Policy by refusing to pay prior to September 18, 2013. Stonebridge is also not liable for violating its duty of good faith and fair dealing throughout the claim period and this litigation, as the evidence establishes there was no more than a good faith coverage dispute between the parties. Stonebridge is therefore entitled to summary judgment on those claims. With respect to Plaintiff's prompt-payment claim, however, the record is unclear as to when or if Stonebridge ever accepted Plaintiff's claim in compliance with the Texas Insurance Code, and therefore equally unclear as to whether Stonebridge promptly paid once the claim had been accepted. Stonebridge is not entitled to summary judgment on that claim.

Accordingly,

IT IS ORDERED that Defendant Stonebridge Life Insurance Company's Motion for Summary Judgment [#19] is DISMISSED AS MOOT in light of Stonebridge's amended motion;

IT IS FURTHER ORDERED that Stonebridge's Amended Motion for Summary Judgment [#38] is GRANTED IN PART and DENIED IN PART, as described in this opinion;

-19-

IT IS FURTHER ORDERED that Stonebridge's Motion for Extension of Time to File Reply [#44] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Sur-Reply [#51] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Amended Response [#48] is GRANTED;

IT IS FURTHER ORDERED that Stonebridge's Motion for Leave to File Sur-Reply and Amended Answer [#28] is GRANTED;

IT IS FURTHER ORDERED that Stonebridge's Motion to Withdraw its Opposition to Timmins's Motion for Extension of Time [#32] is GRANTED;

IT IS FINALLY ORDERED that Plaintiff's Motion for Partial Summary Judgment [#49] is DENIED.

SIGNED this the 22nd day of August 2014.


SAM SPARKS
UNITED STATES DISTRICT JUDGE