**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2014 NOV 18  PM 1:21

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

PATRICIA TIMMINS,
                    **Plaintiff,**

-vs-                                                              **Case No.  A-13-CA-894-SS**

**STONEBRIDGE LIFE INSURANCE COMPANY,**
                    **Defendant.**

_____

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Stonebridge Life Insurance Company's Second Motion for Summary Judgment [#59], Plaintiff Patricia Timmins's Response [#60] thereto, Defendant's Reply [#62] thereto, Plaintiff's Motion for Leave to File Sur-Reply [#63],[1] Defendant's Response [#65] thereto, Plaintiff's Post-Hearing Brief [#67], Defendant's Response [#68] thereto, Plaintiff's Reply [#69] thereto, and Defendant's Motion for Leave to File Sur-Reply [#70].[2]  Having reviewed the documents, the arguments of the parties during hearing before the Court, the governing law, and the file as a whole, the Court enters the following opinion and orders.

## Background

This case began as a dispute over Defendant Stonebridge Life Insurance Company's obligation to pay Plaintiff Patricia Timmins a $25,000 accidental death benefit under the terms of

---

[1] The Court GRANTS Plaintiff's Motion for Leave to File Sur-Reply [#63], and has considered the arguments in the Sur-Reply [#63-2] attached to the motion in making its rulings.

[2] The Court GRANTS Defendant's Motion for Leave to File Sur-Reply [#70] and has considered the arguments in the Sur-Reply [#70-2] attached to the motion in making its rulings.

her husband's insurance policy following her husband's death.  Several months after this suit was filed, Stonebridge paid the death benefit in full.  Despite Stonebridge's decision to pay, however, an acerbic battle between the parties' attorneys blossomed into the embarrassment of snarky pleadings presently before the Court.  Underlying the continued conflict is the question whether Stonebridge will be required to pay, in addition to the amount of the claim already paid, statutory interest and attorney's fees.  *See* TEX. INS. CODE § 542.060(a).  Attorneys' fees and costs have no doubt continued to accrue for all parties involved.

The insurance policy in question provides for payment of a $25,000 accidental death benefit if an insured suffers an accidental fatal "injury."  Def.'s Am. Mot. Summ. J. [#38-1], Ex. A (Certificate of Insurance I), at 7.  An "injury" is defined by the policy as a "bodily Injury . . . caused by an accident" which "results in Loss covered by the Policy" and "creates a Loss due, directly and independently of all other causes, to such accidental bodily Injury."  Def.'s Second Mot. Summ. J. [#59-1], Ex. A (Certificate of Insurance II[3]), at 2.  The policy contains a number of exclusions rendering the benefit non-payable, including injury "due to disease, bodily or mental infirmity, or medical or surgical treatment of these" and injury that "does not directly and independently of all other causes create a Loss."  *Id.* at 4.

Plaintiff's husband died on September 19, 2011 while alone in his home; Plaintiff found him and contacted the Blanco County EMS.  EMS records show the dispatch was for "Cardiac Arrest."  Def.'s Am. Mot. Summ. J. [#38-1], Ex. C (EMS Records), at 1.  Upon arrival, EMS found Mr. Timmins "sitting in the corner of the bathroom, with his hands wrapped around a toilet that ha[d]

---

[3] Neither party attached the complete policy to its pleadings on the instant motion.  Certificate of Insurance I, attached to Stonebridge's pleadings on this motion, is an excerpt from the policy; the complete document, Certificate of Insurance II, is attached to its pleadings on a previous motion.

been dislodged from the floor and [was] leaning against [him]." *Id.* There was "[a] significant amount of blood . . . in and around [his] mouth and nostrils, down [his] front" and "on the bathroom floor." *Id.* Family members told EMS Mr. Timmins suffered from lung cancer; had been experiencing weakness and "syncopal episodes," the medical term for fainting spells, following radiation and chemotherapy treatment; had lesions of the esophagus which caused him to spit up blood; and had "a cardiac history." *Id.* EMS concluded the death was "Presumed Cardiac" and "Cardiac Arrest" and noted the "Reason for Encounter" was "Non-Injury." *Id.* at 2.

The Blanco County Sheriff's Office was also dispatched to the scene; their records accord with the EMS records, recounting the same medical history and stating Mr. Timmins "appeared to have suffered from a possible cardiac symptom and fell to the floor. Mr. Timmins attempted to catch himself by grabbing the toilet . . . and . . . hit the toilet with his face causing bleeding from the nose." *Id.* [#38-1], Ex. C (Sheriff's Narrative), at 1. The Sheriff concluded Mr. Timmins died from "natural causes." *Id.*

The Sheriff's Office requested an inquest into the cause of Mr. Timmins' death, *see* Pl.'s App'x II [#40-1], Ex. P-7, Ex. B (Inquest Form), which was performed by Justice of the Peace Terry Carter. Justice Carter responded to the scene of Mr. Timmins's death; his handwritten notes show his observations of the scene and reveal he considered a number of possible causes of death, including Mr. Timmins passing out and falling, slipping and falling, and asphyxiating. *See id.* [#40-1], Ex. P-7, Ex. B (Inquest Worksheet), at 32. Justice Carter's report concluded the death was non-accidental given Mr. Timmins's "COPD and other heart problems," "carcinoma," and "throat lesions," and after consulting with Mr. Timmins's family, found no autopsy was necessary. *Id.* at 18–19. Justice Carter subsequently assembled a file of materials concerning Mr. Timmins, his

medical history, and his death in preparation for producing a death certificate, *see id.* [#40-1], Ex. P-7 (Carter Aff.), at ¶¶ 1–3; *id.* at Ex. P-7, Ex. B (Inquest File Items List), at 6, and ultimately concluded, as reflected in the original death certificate, that the "Manner of Death" was "Natural," the "Immediate" cause of Mr. Timmins's death was "Probable Heart Attack," and the "Underlying" causes were "Coronary Artery Disease," "Hypertension," and "Lung Cancer." Def.'s Am. Mot. Summ. J. [#38-1], Ex. B (Certificate of Death), at 28.

Plaintiff notified Stonebridge of her husband's death on December 16, 2011, and submitted her accidental death claim forms, prepared with assistance of counsel, on August 7, 2012. *See* Def.'s Second Mot. Summ. J. [#59-1], Second King Aff. ¶ 3. The materials Plaintiff provided on August 7, 2012, included the following: (1) an affidavit from Plaintiff; (2) the North Blanco County EMS records; (3) the Blanco County Sheriff's Office records and Inquest Form; (4) the records of Plaintiff's 9-1-1 call; (5) prior medical records from Mr. Timmins's oncologist, Dr. James Uyeki; (6) prior medical records from Mr. Timmins's cardiologist, Dr. James Williams; (7) an obituary; (8) the Death Certificate; (9) several authorizations for disclosure of medical information; and (10) a Report of Death from the funeral director. Pl.'s App'x I [#39-2], Ex. P-6, Ex. B (Claim File).

On August 14, 2012, Stonebridge sent a letter to Plaintiff acknowledging receipt of her claim, but explaining since "according to the Certificate of Death . . . it was determined that the immediate cause of death was probable heart attack" with underlying causes of coronary artery disease, hypertension, and lung cancer, "[t]he manner of death is listed as natural," and thus "[u]ntil such time as medical evidence is received to show Mr. Timmins's death was due to bodily Injury . . . caused by an accident due directly and independently of all other causes," the accidental death benefit was not payable. *Id.* [#59-1], Ex. C (King Letter), at 1–2. Stonebridge informed Plaintiff

as she was claiming the accidental death benefit, she would need to "provide medical information from a doctor to support your claim along with a copy of the amended Certificate of Death[,]" and Stonebridge would be unable "to take further action until [it was] provided with additional proof of loss[.]" *Id.* at 2.

Plaintiff failed to respond to Stonebridge's August 14, 2012 letter. She took no further action concerning her claim until over a year later, when on September 18, 2013, she sent a letter and "Motion to Reopen the Inquest" to Justice Carter requesting amendment of her husband's death certificate. Def.'s Am. Mot. Summ. J. [#38-1], Ex. G (Riley Letter & Mot.), at 87. In the Motion, Plaintiff stated she, through counsel, "ha[d] conducted an investigation" and "consulted with the decedent's treating oncologist concerning [Mr. Timmins's] state of health and the likelihood that he died as a result of an accidental fall rather than from any pre-existing health issues." *Id.* Plaintiff argued there was "substantial evidence" Mr. Timmins died from a traumatic brain injury caused by his fall rather than from a cardiac event or complications related to lung cancer. *Id.* at 91. The Motion further indicated Mr. Timmins's oncologist, Dr. Uyeki, was prepared to testify it was likely his death was caused by traumatic brain injury rather than by cancer or cardiac arrest. *Id.* Plaintiff filed this lawsuit on September 18, 2013,[4] the same day she sent the letter and Motion to Justice Carter.

On October 1, 2013, Justice Carter issued an amended death certificate which changed Mr. Timmins's "Manner of Death" from "Natural" to "Accident." *Id.* [#38-1], Ex. H (Am. Death Certificate), at 94. The amended death certificate changed the "Immediate" cause of death from

---

[4] Plaintiff filed her Original Petition in the 33rd Judicial District Court of Blanco County, Texas. *See* App'x [#6] at 3 (Pl.'s Orig. Pet.). Stonebridge removed the suit to this Court under its diversity jurisdiction on October 8, 2013. *See* Notice Removal [#1] ¶¶ 2–5.

"Probable Heart Attack" to "Asphyxia by Vomitus," and listed the "Underlying" causes of death as "Blunt Force Injury to Face," "Fall," and "Lung Cancer." *Id.* On November 13, 2013, Plaintiff sent a copy of the amended death certificate, unaccompanied by any further information, to Stonebridge. Second King Aff. ¶ 6. Stonebridge thereafter requested a copy of Justice Carter's inquest file, which Plaintiff provided to Stonebridge on December 4, 2013.[5] Pl.'s Resp. [#60] at ¶ 10. The inquest file contained no new documents. *See id.* at ¶ 8; Pl.'s Resp. [#60] at ¶¶ 3–4.

Stonebridge then requested Mr. Timmins's medical records directly from Mr. Timmins's medical providers, which it received on February 10, 2014.[6] Pl.'s Resp. [#60] at 7 n.15. Nothing in the medical records it received discussed the causes of Mr. Timmins's fall or death. *Id.* at ¶ 9. That same day, Stonebridge "was informed there had been no hearing on the Motion" and Plaintiff had provided no further evidence or testimony to Justice Carter from Dr. Uyeki or anyone else. *Id.* at ¶ 12. In Stonebridge's words, "[i]n the absence of anything to support or refute the finding in the Amended Death Certificate, . . . on Friday, February 21, 2014, Stonebridge made the decision to pay the claim for the $25,000 benefit." *Id.* at ¶ 13.

Plaintiff's Original Petition, filed in state court, raised claims for (1) declaratory judgment declaring her rights under the policy; (2) breach of contract for failure to pay the benefit owed; and (3) violations of the Texas Insurance Code, including (i) failure to promptly pay and (ii) violation of the duty of good faith and fair dealing by refusing to pay without a reasonable basis to do so. Stonebridge previously moved for summary judgment on all claims; the Court granted summary

---

[5] The parties dispute the date Stonebridge received the file, despite the fact the dispute is legally irrelevant, as whether calculated from December 4, 2013, as Plaintiff contends, or December 9, 2013, as Stonebridge contends, using the date Stonebridge received the file as the legally operative prompt-payment date produces the same result. As Plaintiff is the nonmovant, the Court adopts Plaintiff's preferred date.

[6] Again, the parties dispute a legally irrelevant point, and again, the Court adopts Plaintiff's preferred date.

judgment in its favor on the breach of contract and good faith and fair dealing claims, finding Plaintiff failed to carry her burden to establish coverage under the policy and the evidence demonstrated only a good-faith coverage dispute between the parties. Aug. 22, 2014 Order [#54] at 19. The Court denied Stonebridge's motion as to the statutory prompt-payment claim, however, as there was insufficient record evidence of crucial dates necessary to resolve the claim. *Id.* This motion followed.

## Analysis

### I.    Legal Standard - Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary

judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.     Application

As the Court explained in its previous Order disposing of the first round of summary judgment motions, *see* Aug. 22, 2014 Order [#54], under Texas law, an insurer has fifteen days from receipt of notice of a claim to "(1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant." TEX. INS. CODE § 542.055(a)(1)–(3). The insurer "may make additional requests for information if during the

investigation of the claim the additional requests are necessary." *Id.* at § 542.055(b). The insurer

is then required to "notify the claimant in writing of the acceptance or rejection of a claim not later

than the 15th business day after the date the insurer receives all items, statements, and forms required

by the insurer to secure final proof of loss." *Id.* § 542.056. Once an insurer notifies a claimant it will

pay a claim, the insurer has five business days to do so. *Id.* § 542.057. If the insurer delays for more

than sixty days beyond that time period, it is liable for damages in the form of "interest on the

amount of the claim at the rate of 18 percent a year . . . together with reasonable attorney's fees."

*Id.* §§ 542.058, .060.

    Accordingly, the first step in analyzing a prompt-payment claim is determining when the

insurer "receive[d] all items, statements, and forms required by the insurer to secure final proof of

loss." *Id.* § 542.056. That date starts the fifteen business day timer to accept or reject a claim, and

it is that date which is disputed by the parties.[7]

    Plaintiff argues starting the fifteen-day clock from February 10, 2014, the date Stonebridge

received the additional medical records from Mr. Timmins's medical providers, controverts the text

of the Texas Insurance Code, as starting the clock from that date would mean Stonebridge did not

receive all materials it required to secure proof of loss until "third parties" furnished the medical

records. Plaintiff contends "items, statements, and forms" as used in § 542.056 must refer only to

those "items, statements, and forms" which, under § 542.055, the insurer must "request *from the*

*claimant*" within fifteen days of notice of claim. Thus, under Plaintiff's view, the fifteen-day time

---

[7] To the extent plaintiff argues the clock began running on August 7, 2012, the date she submitted her original claim, her argument is rejected. As this Court set forth in its Order on Stonebridge's first motion for summary judgment, the "record establishes that Plaintiff, at the time she submitted her claim, failed to carry her burden of establishing coverage under the Policy. Virtually all of the documentation Plaintiff submitted in support of her claim indicated Mr. Timmins died of a heart attack resulting from his numerous health problems, including his lung cancer." Aug. 22, 2014 Order [#54] at 12.

limit cannot be based upon when the insurer receives materials requested from third parties; the time limit can be based only upon receipt of those materials reasonably requested from the claimant. Consequently, Plaintiff argues the fifteen-day clock could not have begun running on the date Stonebridge received, directly from Mr. Timmins's providers, the additional medical records it requested.

The Court disagrees with Plaintiff. The fifteen-day timer in § 542.056 is triggered only after the insurer receives "all items, statements, and forms required" to make a coverage decision. TEX. INS. CODE § 542.056(a). Plaintiff's argument completely ignores the fact Stonebridge requested medical records from Plaintiff supporting the claim her husband's death was accidental in its August 14, 2012 response to Plaintiff's notice of claim. Rather than provide Stonebridge with the information it requested—a reasonable request, given the official reports' total unanimity Mr. Timmins's death was *not* an accident—Plaintiff did nothing for a year and a half, then filed this lawsuit. Plaintiff's real argument has nothing to do with the construction of "items, statements, and forms" as used in the Texas Insurance Code; in reality, Plaintiff is contending it was unreasonable for Stonebridge to request additional medical information in the first place, an argument this Court rejected in its Order on the parties' previous motions for summary judgment: it was Plaintiff's burden to establish coverage under the policy, and "[w]hen all of the evidence, including a death certificate, indicate[d] [Mr. Timmins's] death was not accidental, it [was] not unreasonable for [Stonebridge] to request some evidence supporting a claim it *was* accidental." Aug. 22, 2014 Order [#54] at 14 n.11.

Construing § 542.058, which, again, renderes an insurer liable to a claimant if "after receiving all items, statements, and forms reasonably requested and required under Section 542.055,"

the insurer delays payment of the claim for more than 60 days, the Southern District of Texas concluded liability could not attach until the claimant provided the insurer with the materials it reasonably requested and required to make a coverage decision. *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 572 (S.D. Tex. 2012). This Court finds, as did the *Partain* court in construing § 542.058, the clock in § 542.056 does not begin to run until the claimant provides the insurer with those materials it reasonably requests from the claimant in order to make a coverage decision. This conclusion accords with the general rule the claimant has the initial burden to establish coverage under the policy. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010); *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009).[8] Making an insurer liable for failure to promptly pay a claim where the claimant has refused to provide information reasonably requested by the insurer to determine coverage in the first place suggests the claimant is not required to carry her initial burden. Further, adopting Plaintiff's construction of § 542.056—which requires acceptance of the propositions (1) the date an insurer's establishment of proof of loss cannot depend upon the date it receives information from third parties *and* (2) insured parties may withhold information reasonably requested by insurers to establish proof of loss—would enable insured parties essentially to force violations of § 542.056 merely by withholding materials from the insurer for a period of time after submitting insufficient proof of loss. That result would not only be nonsensical, it would contravene the purpose of subchapter 542, which "shall be liberally construed to promote the *prompt* payment of insurance claims." TEX. INS. CODE § 542.054 (emphasis added).

---

[8] The Court previously declined to resolve the parties' choice of law dispute as doing so was unnecessary to disposition of the issues. *See* Aug. 22, 2014 Order [#54] at 11. Thus, the Court cites to both Texas and Illinois law where appropriate.

Plaintiff resists this conclusion by suggesting Stonebridge is liable because the medical records it received on February 10, 2014, "proved to be unnecessary" as, despite their inconclusiveness with respect to the cause of Mr. Timmins's death, Stonebridge ultimately paid the claim. Pl.'s Resp. [#60] at 17. While it is somewhat unclear, Plaintiff appears to be arguing Stonebridge did not "require" the additional medical records in order to pay the claim, and thus that Stonebridge had all the materials it "required" either on November 13, 2013, when Plaintiff provided the amended death certificate, or on December 4, 2013, when Plaintiff provided a copy of Justice Carter's inquest file. The Court rejects these arguments. First, no supporting documentation was provided with the amended death certificate, and it was reasonable for Stonebridge to question the basis for an amendment to the cause of Mr. Timmins's death which came over two years after issuance of the original death certificate. Second, the inquest file Stonebridge received contained the same universe of documents Justice Carter relied upon in making his original findings—documents which this Court has already concluded were insufficient to establish coverage under the policy, as all of the official reports concluded Mr. Timmins's death resulted from natural causes, rather than from an accident. *See* Aug. 22, 2014 Order [#54] at 12. It thus remained reasonable for Stonebridge to require medical information supporting the claim Mr. Timmins's death was accidental—the evidence it originally requested—as the sole official piece of evidence which supported Plaintiff's claim was an amended death certificate which was prepared through reliance upon the same evidence originally used to support the opposite conclusion.

While not cited by Plaintiff, the Court notes the fact Stonebridge requested information it reasonably required to determine proof of loss distinguishes this case from *Colonial County Mutual Insurance Company v. Valdez*, 30 S.W.3d 514 (Tex. App.—Corpus Christi 2000, no pet.), where,

-12-

in interpreting the predecessor statute to § 542.056,[9] the court found a claimant's failure to provide information the insurer requested did not preclude the insurer's liability under the statute. The *Valdez* court found the information requested by the insurer, including "service records, sets of keys, and photographs of the vehicle," was irrelevant to proving loss under the policy—in that case, whether or not the vehicle had been stolen. *Id.* at 523. While in *Valdez*, "[c]ommon sense indicate[d]" the materials requested were irrelevant to proving the loss of the vehicle, *id.*, here, common sense indicates, given the overwhelming record evidence Mr. Timmins's death was natural and not accidental, Mr. Timmins's medical records were relevant to determining his cause of death, despite the fact the medical records received were ultimately inconclusive.

Accordingly, the Court finds the fifteen-day clock under § 542.056 did not begin to run until February 10, 2014, the date Stonebridge received the medical records it originally requested from Plaintiff a year and a half prior. Following receipt of the inconclusive medical records, Stonebridge decided to pay the claim,[10] and on February 25, 2014, ten business days later, mailed Plaintiff a

---

[9] The *Valdez* court was interpreting Texas Insurance Code section 21.55, which provided:

Except as provided by subsections (b) and (d) of this section, an insurer shall notify a claimant in writing of the acceptance or rejection of the claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer, in order to secure final proof of loss.

TEX. INS. CODE ANN. art. 21.55 § 3(a) (Vernon Supp. 2000), *repealed by* Unfair Claim Settlement Practices Act, H.B. 2922, 2003 Tex. Sess. Law Serv. 1274, § 2 (Vernon's).

[10] The Court notes the evidence before Stonebridge when it decided to pay Plaintiff's claim was insufficient to find Mr. Timmins's death accidental. With the sole exception of the amended death certificate, all of the evidence was either silent on the question of cause of death or concluded it was one or more of Mr. Timmins's several serious health problems. Further, as Stonebridge points out, even the amended death certificate listed "Lung Cancer" as an underlying cause of death, and for the benefit to be payable, the policy requires the accidental injury cause death "directly and independently of all other causes." *See* Def.'s Resp. Pl's Post-Hr'g Brief [#68] at 2 n.5; Certificate of Insurance II at 4. Stonebridge's decision to pay Plaintiff's claim was not an admission the claim fell within the policy terms, as "'evidence of a coverage dispute is not evidence that liability under the policy had become reasonably clear.'" *First Cmty. Bancshares v. St. Paul Mercury Ins. Co.*, —F. App'x—, No. 13-50657, 2014 WL 6064937, at *4 (5th Cir. Nov. 14, 2014) (per curiam) (citing and quoting *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 194 (Tex. 1998)).

notice of acceptance of the claim along with a $25,000 check.  Stonebridge thus paid within five business days of notifying Plaintiff it would pay her claim, *see* TEX. INS. CODE § 542.057, and well within the sixty-day period prescribed by § 542.060, *see id.* at § 542.060(a).  Consequently, Stonebridge complied with all of its statutory prompt-payment obligations, and is entitled to summary judgment.

### Conclusion

Accordingly,

IT IS ORDERED that Plaintiff Patricia Timmins's Motion for Leave to File Sur-Reply [#63] is GRANTED;

IT IS FURTHER ORDERED that Defendant Stonebridge Life Insurance Company's Motion for Leave to File Sur-Reply [#70] is GRANTED; and

IT IS FINALLY ORDERED that Defendant Stonebridge Life Insurance Company's Second Motion for Summary Judgment [#59] is GRANTED.

SIGNED this the _18th_ day of November 2014.


SAM SPARKS
UNITED STATES DISTRICT JUDGE